UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| KENT  HIGGINS and JENNIFER HIGGINS, Individually and as Parents and Natural Guardians, and Next Friend on behalf of AH and NH, Minors, and JOHN  TAYLOR and SARAH TAYLOR, Individually and as Parents and Natural Guardians, and Next Friend on behalf of JT, a Minor, and RACHEL  TAYLOR,<br><br>Plaintiffs,<br><br>vs.<br><br>KOCH DEVELOPMENT CORPORATION, d/b/a Holiday World & Splashin' Safari,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     3:11-cv-00081-RLY-WGH<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Kent Higgins, Jennifer Higgins, AH, and NH (the "Higgins") were visiting

Holiday World & Splashin' Safari when an abundance of chemicals poured into the "lazy

river."  The Higgins allege that they were injured as a result of the exposure.  As such,

they sued Defendant, Koch Development Corporation d/b/a Holiday World & Splashin'

Safari ("Holiday World"), for negligence.  Holiday World moves for summary judgment

asserting that the Higgins cannot establish that its actions caused the alleged injuries.  For

the reasons set forth below, the court **GRANTS** summary judgment in favor of Holiday

World.

## I.        Background

On June 20, 2009, the Higgins visited Holiday World and used the lazy river known as the "Bahari River."  (Parties' Stipulation of Facts ¶ 1).  A filter pump connected to a breaker filtered muriatic acid (also known as hydrochloric acid) and liquid bleach into the water.  (*Id.* at ¶ 3).  The breaker that controlled this pump was tripped and shut off.  (*Id.*).  While Holiday World was in the process of re-setting the breaker connected to the filter pump, excess bleach and muriatic acid accumulated in the shut down filter pump.  (*Id.*).  Once the pump restarted, the excess chemicals were discharged into the Bahari River.  (*Id.*).  Upon discharge, the excess chemicals created and/or released chlorine gas.  (*Id.*).

At the time of the discharge, the Higgins family was not near the Bahari River.  (Deposition of Kent Higgins ("Higgins Dep.") 21:23-25).  They proceeded to the Bahari River after receiving a phone call indicating that their niece, who was in or by the Bahari River, was in trouble.  (*Id.* 22:2-16).  When they arrived, they were exposed to the chlorine gas.  (*Id.*).  Mr. Higgins went to the emergency room complaining of chest tightness and burning, eyes burning, shortness of breath, and nausea.  (Emergency Department Nursing Flow Sheet, Docket # 209).  He was discharged that day with instructions to follow up with his primary physician.  (*Id.*).

Dr. Zaman, Mr. Higgins' primary physician, referred Mr. Higgins to Dr. Linda Haacke, an internist and pulmonologist.  She first evaluated him on August 18, 2010, more than a year after the exposure.  (Letter from Dr. Haacke to Dr. Zaman dated August 18, 2010).  Specifically, Dr. Haacke diagnosed Mr. Higgins with reactive airways dysfunction syndrome ("RADS") and asthma.  She based this diagnosis in part on a letter

indicating the results of a prior pulmonary function study performed in August 2009; Dr. Haacke did not have access to the actual results or data from that study at the time of diagnosis. (*Id.*). Dr. Haacke continues to treat Mr. Higgins' for his injuries, seeing him approximately once every six months and prescribing his medications. (Deposition of Dr. Haacke ("Dr. Haacke Dep.") 15:8-12, 16:5-10).

As a result, the Higgins sued Holiday World for their medical expenses in May 2011. (Complaint). The Higgins claim to have incurred medical expenses in the amounts of $19,213.95 for Kent Higgins, $435 for Jennifer Higgins, $812.10 for NH, and $812.10 for AH. (Parties' Stipulated Facts ¶ 5).

Prior to the filing of the motion for summary judgment the court allowed Dr. Anthony Margherita to be belatedly identified as a causation expert. (Docket # 63). After conducting discovery on Dr. Margherita, Holiday World filed a motion to exclude his testimony on multiple grounds. On December 3, 2013, the court granted the motion in part and denied it in part. (Docket # 173). The court found that Dr. Margherita did not set forth a reliable methodology for determining causation, and thus his opinion on it must be excluded. (*Id.* at 17). As a result, Holiday World filed the present motion for summary judgment on December 19, 2013.[1]

## II.     Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v.*

---

[1] The court notes that this is an untimely motion for summary judgment because discovery closed in September of 2013. Nevertheless, with no objection on this ground from the Higgins, the court, exercising discretion over its docket, will consider the motion.

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a motion for summary judgment, the burden rests with the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id*. at 322-23. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87); *Celotex*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 249-52.

### III.    Discussion

Holiday World argues that summary judgment should be granted in its favor because the Higgins cannot prove causation. According to Holiday World, the Higgins must have an expert testify in order to establish causation and survive summary judgment. Holiday World contends that the Higgins do not have an expert to testify regarding causation

4

because the court disqualified Dr. Margherita.  The Higgins respond that an expert on

causation is not necessary in this case, and that if one is, Dr. Haacke is qualified to

provide expert testimony on causation.  Holiday World asserts that Dr. Haacke's

proffered testimony on causation should not be admitted for two reasons: (1) the Higgins

failed to designate her as an expert for causation under Rule 26(a) and (2) her testimony

fails to meet the *Daubert* standard.

## A.  Necessity of Expert Testimony

The primary question is whether the Higgins' need an expert witness to testify to

specific causation.  In a toxic tort case, such as this one, the plaintiff must meet a two-

step process to prove causation.  *Aurand v. Norfolk S. Ry. Co.*, 802 F. Supp. 2d 950, 953

(N.D. Ind. 2011).  First, there must be general causation which addresses whether a

particular agent can cause a particular illness.  *Id.*  Second, the plaintiff must show

specific causation meaning whether that agent in fact caused the particular plaintiff's

injuries.  *Id.*  The Seventh Circuit has held that "when there is no obvious origin to an

injury and it has multiple potential etiologies, expert testimony is necessary to establish

causation."  *Id.* (citing *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010)).

An example of an injury with an obvious origin is a broken leg from a car

accident.  In that circumstance, the cause of the injury is obviously the accident.  *See*

*Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010).  Here, the cause of the

injury is not as obvious.  A pulmonary injury, such as asthma, can have several different

causes.  A jury would simply be left to speculate as to which of the several etiologies is

responsible for Mr. Higgins' condition.  This speculation would be propounded by the dispute in this case concerning the amount of chlorine gas Mr. Higgins was exposed to.

Mr. Higgins directs the court to a Sixth Circuit case where a customer at Lowe's was exposed to pool chemicals in a one-time sudden exposure.  *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171 (6th Cir. 2009).   In that case, the plaintiff was reaching for the pool chemicals when a slit in the bag allowed the chemicals to pour directly on the plaintiff.  The Sixth Circuit found that a jury could infer this caused the injury.  *Id.* However, this case does not involve such a clear cut case of exposure.  Mr. Higgins, admittedly, was not near the site of the chemical spill at the time it initially occurred. Rather, he made his way to the site after the fact.  It is unknown how long the chemical was in the air, and therefore, how much of it dissipated before Mr. Higgins arrived.

Because the amount of exposure is uncertain and numerous possible causes exist for Mr. Higgins' respiratory ailments, the court cannot find that it is obvious that the alleged exposure caused Mr. Higgins' injuries.  An expert witness is therefore necessary to show causation in this case.  The court will now consider whether Dr. Haacke can testify as an expert to the causation of Mr. Higgins' injuries.

## B.  Can Dr. Haacke testify as an expert?

### i.    Disclosure as an expert

Holiday World first argues that Dr. Haacke cannot testify as an expert on causation on procedural grounds, because the Higgins did not submit a report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).  The Higgins disclosed Dr. Haacke as their treating physician and submitted a letter from Dr. Haacke to the Higgins' former counsel dated

May 17, 2012.   The expert disclosure deadline has passed and trial is less than a week

away.

"A treating physician is an expert witness when [s]he testifies about opinions formed

during or after treatment of the patient."  *Coleman v. Am. Family Mut. Ins. Co.*, 274

F.R.D. 641, 644 (N.D. Ind. 2011) (citing *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d

729, 734-35 (7th Cir. 2010)).  This is because such opinions are based on scientific,

technical, or other specialized knowledge.  *Id.*  However, not all treating physicians are

required to submit an expert report.  If the treating physician is testifying only about her

observations during treatment, she is not required to file a report.  *Id.*

The Seventh Circuit has found, in the context of a FELA case, that

> a treating physician who is offered to provide expert testimony as to the
> cause of the plaintiff's injury, but who did not make the determination in
> the course of providing treatment, should be deemed to be one 'retained or
> specially employed to provide expert testimony in the case,' and thus is
> required to submit an expert report in accordance with Rule 26(a)(2).

*Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 734-35 (7th Cir. 2010).  It is unclear

whether this ruling is superseded by the 2010 Amendment to Rule 26, which added

subpart (a)(2)(C) and is applicable to expert witnesses who do not fall under the report

requirement.  *Coleman*, 274 F.R.D. at 644.  The amended rule requires a disclosure

indicating the subject matter the expert will testify to and a summary of the facts and

opinions that she will testify to.  FED. R. CIV. P. 26(a)(2)(C).  The advisory committee

notes indicate that physicians commonly fall in this category.  FED. R. CIV. P. 26 advisory

committee notes, 2010 amendments.  Either way, "[f]ailure to disclose a treating

physician as an expert will permit them to testify only as a fact witness, not an expert

witness." *Vandivier v. U.S.*, No. 1:12-cv-00260-TWP-DML, 2013 WL 6058902, * 3 (S.D. Ind. Nov. 16, 2013) (slip copy) (citing *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)).

Dr. Haacke was originally disclosed as a treating physician. Prior to the expert disclosure deadline, the Higgins produced a letter from Dr. Haacke to the Higgins' former counsel. This letter is an update concerning Mr. Higgins' follow-up care. (Docket # 175-1). The Higgins did not respond to the procedural argument set forth by Holiday World, and thus, the court is not told whether this letter was meant to serve as a summary report under Rule 26(a)(2)(C) for Dr. Haacke. The letter incorrectly states that Mr. Higgins was injured while on the job. (*Id.*). Dr. Haacke also twice opines that his diagnosis was a result of the exposure. (*Id.*).

To further add to the confusion, counsel for Holiday World objected at Dr. Haacke's deposition to a line of questioning regarding its hired expert, Dr. Selby, because she was not a hired expert. (Dr. Haacke Dep. 17:2-6). The Higgins' counsel responded to the objection explaining that her testimony was merely to rebut Dr. Selby. (*Id.* at 17:7-9). It remains unclear whether the questions regarding causation were part of the testimony to rebut Dr. Selby's opinion; nevertheless, Holiday World cross-examined Dr. Haacke about other possible causation factors.

The court does not have enough information to determine whether Dr. Haacke reached her conclusion on causation during the course of treatment of Mr. Higgins. For purposes of this entry, the court will assume that Dr. Haacke was properly disclosed as a

causation expert, and proceed with whether Dr. Haacke meets the requirements of *Daubert*.

### ii. Does she satisfy *Daubert*?

Rule 702 of the Federal Rules of Evidence ("Rule 702") and the principles set forth in *Daubert* govern the admissibility of expert testimony. *Smith v. Ford Motor Co.*, 215 F.3d 713, 717-18 (7th Cir. 2000). The court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The Seventh Circuit has set forth a three-step analysis in its application of the *Daubert* standard: (1) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and (3) the testimony must assist the trier of fact to understand evidence or to determine a fact in issue. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). The party proffering the expert must show these factors by a "preponderance of proof." *United States v. Allen*, 207 F. Supp. 2d 856, 869 (N.D. Ind. 2002) (citing *Daubert*, 509 U.S. at 592 n. 10).

Holiday World argues that Dr. Haacke does not satisfy the first and second requirements. The court will evaluate each in turn.

### a. Qualifications

An expert may be qualified by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. The court must focus not on "whether the 'expert is qualified in general, but whether his or her 'qualifications provide a foundation for [him

or her] to answer a specific question.'" *Lemmermann v. Blue Cross Blue Shield of Wis.*, 713 F. Supp. 2d 791, 796 (E.D. Wis. 2010) (citing *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)).

Holiday World argues that Dr. Haacke is not qualified to testify to causation because she does not purport to have any training or experience in toxicology, chemical exposure, or chlorine gas exposure cases. The Higgins respond that Dr. Haacke is qualified because she is a medical doctor. However, "merely possessing a medical degree does not qualify its holder as an expert in all medical related fields." *Baldauf v. Davidson*, No. 1:01-cv-1571, 2007 WL 2155967, * 3 (S.D. Ind. Jul. 24, 2007). Therefore, the Higgins' first argument fails; they must show that she has more specific knowledge regarding the cause of Mr. Higgins' injuries.

Dr. Haacke provided her background in her deposition. She went to medical school at Case Western Reserve University, completed her residency in internal medicine, and completed a fellowship in pulmonary critical care medicine. (Dr. Haacke Deposition ("Dr. Haacke Dep.") 6:3-8). She is board certified in sleep medicine and pulmonology. (6:3-24, 7:1). Her practice is confined to pulmonary critical care and sleep. (*Id.* 6:17-21). Dr. Haacke has had more than twenty years of experience in practice. (*Id.* 6:3-8).

Dr. Haacke began treating Mr. Higgins in August of 2010 upon the referral of his family physician, Dr. Zaman. (*Id.* 7:21-24, 8:12-13). She obtained an oral history from Mr. Higgins regarding his past medical history and alleged exposure. (*Id.* 8:1-11). Dr. Haacke admitted to not knowing the exact circumstances surrounding Mr. Higgins'

exposure to the chlorine gas. (*Id.* 29:3-16). Additionally, Dr. Haacke admitted that for purposes of her treatment of Mr. Higgins, she did not need to know how much he was exposed to or how he was exposed. (*Id.* 44:7-12).

Dr. Haacke is qualified as a pulmonologist to diagnosis and treat Mr. Higgins. The Higgins have not, however, provided any information regarding a background that would give her superior knowledge on the affects of chlorine gas exposure on the human pulmonary system. Additionally, there is no indication that Dr. Haacke has previous experience treating patients who have been exposed to chlorine gas. Therefore, the court cannot find that Dr. Haacke has superior knowledge regarding the effects of chlorine gas exposure. She therefore is not qualified to opine that the exposure caused Mr. Higgins' injuries.

### b. Methodology

The "district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996). "An expert's work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff – deploying neither data nor analysis – is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). The court must determine whether the proffered opinions are grounded in then methods and procedures in science and whether such testimony has sufficient factual underpinnings. *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 536 (7th Cir. 2000).

11

Holiday World asserts that Dr. Haacke failed to put forth a causation

methodology.  The Higgins respond that Dr. Haacke engaged in differential diagnosis.

The Seventh Circuit recognizes differential diagnosis as a valid methodology for an

expert to render an opinion about the identity of a specific ailment.  In *Myers v. Illinois*

*Central Railroad Company*, the Seventh Circuit opined that "differential etiology" is the

correct term for determining the cause of an ailment.  629 F.3d 639, 644 (7th Cir. 2010).

"[I]n a differential etiology, the doctor rules in all the potential causes of a patient's

ailment and then by systematically ruling out causes that would not apply to the patient,

the physician arrives at what is the likely cause of the ailment."  *Id.*  The district court

determines whether this method is reliable on a case-by-case basis "focused on which

potential causes should be 'ruled in' and which should be 'ruled out.'" *Id.*

The Higgins argue that Dr. Haacke's use of this methodology is clearly shown in

her initial record – the letter she wrote to Dr. Zaman.  (Docket # 182-1).   In that letter,

Dr. Haacke indicates that Mr. Higgins' symptoms started "abruptly" when he was

exposed to the chemical spill.  (*Id.*).  She also discusses his family history and that he

reports no allergies.  (*Id.*).  The letter fails to discuss any potential causes of Mr. Higgins'

ailments other than the chemical spill.  Dr. Haacke does not engage in any analysis

regarding the cause of his injuries.  For example, the letter indicates Mr. Higgins' weight

and that his father had emphysema, but fails to discuss any impact these could have on

his condition.

In addition, Dr. Haacke admitted in deposition that "there can be many causes of

asthma and the response is just a final common pathway."  (Dr. Haacke Dep. 24:15-16).

She further admitted that Mr. Higgins' weight may contribute to his diminished lung capacity. (*Id.* 25:19-24, 26:1-2). Finally, she notes that there may be a genetic component to it. (*Id.* 24:17-20). None of these causes are considered in her letter. The following excerpt from her deposition shows the speculation she used in addressing the causation issue:

> Q: Okay. Now, do you know how long he's been overweight?
> A: No.
> Q: Okay. *Assuming* he's been the same weight for fifteen or twenty years, yet he did not have the lung problems, what, if anything, does that tell you about the cause of his lung problems?
> A: Based on the history, the cause was the exposure to the chlorine, and yeah.

(*Id.* 19:22-24, 20:1-6) (emphasis added). Although Dr. Haacke followed this by saying that to a degree of medical certainty she believes the chlorine caused Mr. Higgins' injuries, the quoted excerpt clearly shows that she did not rule out the potential causes as required by differential etiologies. (*Id.* 20:8-20). Therefore, the court finds that her methodology is not reliable. As such, Dr. Haacke is prohibited from offering her opinion on the causation of Mr. Higgins' injuries.

## IV. Conclusion

The proffered testimony by Dr. Haacke on the causation of the Higgins' injuries is inadmissible because it does not meet the standards set forth by the Supreme Court in *Daubert*. As a result, the Higgins have no expert testimony, as required, to present to the

jury on the issue of causation. Therefore, the court **GRANTS** Holiday World's motion

for summary judgment (Docket # 174).


**SO ORDERED** this 5th day of February 2014.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana



Distributed Electronically to Registered Counsel of Record.